The Honorable Bill Bunten State Senator, 20th District 1701 S.W. 30th Street Topeka, Kansas 66611
Dear Senator Bunten:
You request our opinion regarding the authority of the Joint Committee on State-Tribal Relations to make recommendations on a gaming compact that is currently being negotiated between the Governor and representatives of the Sac and Fox Nation of Missouri in Kansas and Nebraska and the Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas. You note that the location being considered in these compact negotiations is in Wyandotte County, Kansas, whereas these Tribes' reservations are located in northeast Kansas, and that the definition for "compact" in K.S.A. 74-9802(f) includes only those compacts entered into between the State and the four resident Kansas Tribes for gaming on their reservation property. Thus you inquire whether the Committee's authority extends to compacts that are negotiated for class III gaming on lands that are not located within any of the four Tribes' current reservations.
K.S.A. 2003 Supp. 46-2303 is the statute that establishes the Joint Committee and sets forth its powers and duties. That statute provides in part as follows:
"(g) The joint committee:
. . . .
 "(4) shall recommend modification of proposed gaming compacts submitted by the governor and introduce resolutions approving proposed gaming compacts submitted by the governor and recommend that such resolutions be adopted or be not adopted, or report such resolutions without recommendation, and notify the governor, in writing, of the joint committee's action. . . ."[1]
Unlike the definition of the term "compact" in K.S.A. 74-9802(f) of the Tribal Gaming Oversight Act,[2] the term "gaming compact" is defined for purposes of the Indian Gaming Compacts Act[3] as "a tribal-state compact regarding class III gaming as provided by section 11 of the Indian gaming regulatory act (25 U.S.C. § 2710)." The compact currently being negotiated by the Governor and the Tribes is "a tribal-state compact regarding class III gaming." Section 11 of the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2710, is the federal provision that sets forth the prerequisites and procedures for tribes seeking to negotiate class III gaming compacts with a state. While states are not required to negotiate compacts that propose gaming on lands that are not at the time of negotiation "Indian lands" as defined by IGRA,[4] the IGRA does not preclude states from entering into such negotiations or forwarding compacts to the Secretary of Interior with the understanding that the lands will become "Indian lands" prior to the commencement of any class III gaming. Thus, this statutory scheme authorizes the Joint Committee on State-Tribal Relations to take the actions listed in K.S.A. 2003 Supp. 46-2303 when presented with a compact that the Governor has negotiated with any tribe or tribes pursuant to the IGRA. The Joint Committee is not limited to acting only on compacts that provide for gaming on existing reservation lands of the four resident Tribes.
If and when any proposed compact for gaming on lands not a part of the existing reservations is approved by the Legislature and signed by the Governor, the Legislature should consider amending the Tribal Gaming Oversight Act to reflect the new compact provisions.
Sincerely,
 PHILL KLINE Attorney General
 Julene L. Miller Deputy Attorney General
PK:JLM:jm
[1] K.S.A. 2003 Supp. 43-2303.
[2] K.S.A. 74-9801 et seq.
[3] K.S.A. 46-2301 et seq.
[4] 25 U.S.C. § 2703(4).